## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION<br>214 Massachusetts Ave. N.E.<br>Washington, D.C.  20002<br><br>MIKE HOWELL<br>214 Massachusetts Ave. N.E.<br>Washington, D.C.  20002<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20460<br><br>*Defendant*. | Case No. 23-cv-748 |

## COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively

"Plaintiffs") for their complaint against Defendant U.S. ENVIRONMENTAL PROTECTION

AGENCY ("EPA") allege on knowledge as to Plaintiffs, and on information and belief as to all

other matters, as follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

to compel the production of information from the EPA concerning its response to the train

derailment which took place in East Palestine, Ohio, on February 3, 2023, resulting in the release

of toxic chemicals, notably, vinyl chloride (the "Incident").

## PARTIES

2.      Plaintiff The Heritage Foundation ("Heritage") is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense."  Heritage Foundation, *About Heritage*, *found at* https://www.heritage.org/about-heritage/mission (last visited Mar. 20, 2023).  Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information to the public.  Heritage operates a national news outlet, *The Daily Signal*.  *The Daily Signal* has reported extensively on the Incident.  *See* Roman Jankowski, *7 Facts I Discovered During My Visit to East Palestine*, The Daily Signal (Mar. 2, 2023) (Ex. 1).[1]

3.      Plaintiff Mike Howell ("Howell") leads The Heritage Foundation's Oversight Project ("Oversight Project") and is an author for *The Daily Signal*.  The Oversight Project is an

---

[1] @romanjankowski5, Twitter (Mar. 6, 2023, 4:26 PM), https://twitter.com/romanjankowski5/status/1632855070332035072; @romanjankowski5, Twitter (Feb 23, 2023, 6:21 PM), https://twitter.com/romanjankowski5/status/1629260266289365003; @romanjankowski5, @romanjankowski5, Twitter (Feb. 22, 10:24 PM), https://twitter.com/Heritage/status/1628596727858053130; @romanjankowksi5, Twitter (Feb. 22, 2023, 6:02 PM), https://twitter.com/romanjankowski5/status/1628530577010819074; @romanjankowski5, Twitter (Feb. 22, 2023, 6:00 PM), https://twitter.com/romanjankowski5/status/1628530107731025926; @romanjankowski5, Twitter Feb. 22, 2023, 2:38 PM), https://twitter.com/romanjankowski5/status/1628479283852091392; @romanjankowski5, Twitter (Feb. 22, 2023, 2:10 PM), https://twitter.com/romanjankowski5/status/1628472241305358336; @romanjankowski5, Twitter (Feb. 22, 2023, 2:00 PM), https://twitter.com/romanjankowski5/status/1628469808608968709; @romanjokowski5, Twitter (Feb. 22, 2023, 1:52 PM), https://twitter.com/romanjankowski5/status/1628467850422755330; @romanjankowski5, Twitter (Feb. 22, 2023, 1:13 PM), https://twitter.com/romanjankowski5/status/1628457910270320642; @romanjakowski5, Twitter (Feb. 22, 2023, 12:42 PM), https://twitter.com/romanjankowski5/status/1628450226347319296;

initiative aimed at obtaining information via Freedom of Information Act requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight.  The requests and analysis of information is informed by Heritage's deep policy expertise.

4.       Defendant EPA is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1), whose mission is to "protect human health and the environment" by "ensur[ing] that Americans have clean air, land and water."  EPA, *About EPA*; *Our Mission*, *found at* https://www.epa.gov/aboutepa/our-mission-and-what-we-do. (last visited Mar. 20, 2023).

## JURISDICTION AND VENUE

5.       This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

6.       Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant EPA's principal place of business is in the District of Columbia.

## PLAINTIFFS' FOIA REQUEST

7.       Plaintiffs submitted their FOIA Request on February 22, 2023.  FOIA Request EPA-2023-002610 (Feb. 22, 2023) ("Request" or "Plaintiffs' FOIA Request") (Ex. 2).

---

@romanjowski5, Twitter (Feb. 22, 2023, 12:23 PM),
https://twitter.com/romanjankowski5/status/1628445467674648576; @romanjowski5, Twitter
(Feb. 22, 2023, 12:11 PM), https://twitter.com/romanjankowski5/status/1628442470349516801;
@romanjawski5, Twitter (Feb. 22, 2023, 11:49 AM),
https://twitter.com/romanjankowski5/status/1628436807783223297; @romanjowski5, Twitter
(Feb. 22, 2023), https://twitter.com/romanjankowski5/status/1628422415616180226.

8.      The Request began by setting out its focus on the Federal Government's response to the widely reported train derailment incident which occurred in East Palestine, Ohio, and which resulted in the release of several toxic chemicals into the local community.  *Id.* at 1.  It sought records related to the Incident, including EPA communications with Congress, local government, and the train's operator, Norfolk Southern Railroad.  *Id.*

9.      The Request also sought records relating to the testing of air, water, and soil for contamination stemming from the Incident, including records sufficient to show all chemical substances transported on the train and their quantities; the results of all environmental testing on and around the derailment site; the identification of who was overseeing the EPA's response; and the identification of persons conducting the water, soil, and air environmental tests.  *Id.* at 2.

10.     The Request sought records limited to a narrow timeframe surrounding the Incident, from February 2, 2023, to the present.  *Id.* at 3.  It also limited the scope of the search to the following offices:  "the Office of Water, Office of the Administrator, Office of Air and Radiation, Office of Land and Emergency Management, and the following offices of EPA's Region 5 Office:  Office of the Regional Administrator; Land, Chemicals, and Redevelopment Division; and Superfund and Emergency Management Division."  *Id.* at 3.

11.     The Request sought a fee waiver based on the extensive national interest in, and national concern over, the EPA's handling of the Incident.  *Id.* at 5–7.  It also requested expedited processing, as discussed below.  *Id.* at 7–10.

## THE REQUEST FOR EXPEDITED PROCESSING

12.     The Request sought Expedited Processing pursuant to 40 C.F.R. § 2.104(f), because the Request concerned a "compelling need"—"An urgency to inform the public about an actual or alleged Federal government activity" affecting the residents of East Palestine and

beyond.  *Id.* at 7–10.  The Request explained that Plaintiffs are "person[s] primarily engaged in disseminating information to the public" and will use their editorial skills and policy expertise to ensure information from the Request is published to inform the heated on-going national debate over the EPA's response to the Incident and pressing public need for hard data concerning the EPA's actions.  *Id.*  Indeed, the Oversight Project has already reported extensively on its on-the-ground oversight of the Federal Government's response to the Incident.  *See supra* ¶ 2.

13.     The Request explained the urgency in detail:

> On February 3, at around 9 p.m., a train derailed in East Palestine, a town of 4,700 people in Ohio.  A total of 50 cars from the train were derailed or damaged by fire; of these, 20 were reported to have been carrying toxic chemicals.  These chemicals included vinyl chloride, butyl acrylate, ethylhexyl acrylate, and glycol.  On February 6, authorities drained chemicals from five cars in order to perform a controlled burn off, filling the air with dense, black smoke.  As a result of the train derailment and controlled burn, toxic chemicals were released into the air, surface soil, and surface water.  The spill affected seven miles of streams and reportedly killed 3,500 fish.  The governor signed an evacuation order for all residents in a one-by-two-mile area surrounding East Palestine.[2]
>
> Yet in spite of this environmental disaster, videos of dead animals, and health complaints by the locals, the EPA has repeatedly assured the residents of East Palestine that the town is safe for residents and there are no dangerous levels of chemicals in the air or water.[3]

*Id.* at 7.

14.     The vast public interest and possible danger to residents presented in the Request amply support expedition:

> Multiple national media outlets have covered the disaster in East Palestine, Ohio, at length and in detail from the time the disaster occurred up to the present.  *See generally* App. A; B.  In particular, national media outlets have reported on the health effects suffered by residents of East Palestine and the dangerous nature of the chemicals released by the train derailment.  *See* App. A at 3–4, 7–8, 9–11, 12–13, 21–22.  Given the potential health effects on the public, this request concerns a matter of the utmost exigency.  As evidenced by the reporting of multiple national media outlets, a delayed response in releasing critical information could further endanger the public.  The

---

[2]  https://www.nytimes.com/article/ohio-train-derailment.html
[3]  https://www.cbsnews.com/pittsburgh/news/epa-administrator-michael-regan-heads-to-east-palestine-in-wake-of-train-derailment/

exigency of this matter is further highlighted by letters from U.S. Senator Sherrod Brown to Ohio's Governor, all seventeen members of Ohio's congressional delegation to FEMA, Ohio and Pennsylvania Senators to the Administrator of the EPA, and the House Committee on Energy and Commerce to the Administrator of the EPA concerning the Incident and the Government's response.  *See* App. C at 2–3, 4–6, 7–8, 9–10.

*Id.* at 9.

15.     Appendices A and B attached to the Request contain national press coverage of the Incident.

16.     Appendix C is a letter from the House Committee on Energy and Commerce to the Administrator of the EPA concerning the Incident and the Government's response.

17.     Plaintiffs are persons "primarily engaged in disseminating information to the public."

18.     Many agencies' regulations provide that "numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic,"—a requirement amply met by the Request.  *See, e.g.*, 32 C.F.R. § 286.8(e)(3).

19.     Present news reports on the subject matter of a FOIA request may demonstrate that it concerns a matter of current exigency.  *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F.Supp.3d 293, 298 (D.D.C. 2017).  "Recognized interests" include advancing free and open debate on issues of vital national importance, enabling informed participation in Congressional proceedings, and the prevention of improper acts by the government.

20.     To the people of Ohio, indeed to anyone living adjacent to railways in the nation, the information concerning the Incident the Request seeks is *the* essential news item.  A story which "conveys information the public wants quickly" or "would lose value if it were delayed" is a "breaking news story" which fulfills the requirement for a "particular urgency to inform the

public." *ACLU of N. Cal. v. U.S. Dep't of Def.*, No. C 06-01698 (WHA), 2006 WL 1469418, *6 (N.D. Cal. May 25, 2006). The "potential impact of the news" and the importance of it to "public policy and public protests" both demonstrate urgency to inform the public. *Id.*

21.    The public is ravenous for additional news concerning the EPA's response to the Incident both as it relates to public safety in East Palestine and anywhere else commercial train tracks run as well as concerning the raging public debate on the adequacy of the EPA's response to the Incident.

22.    Failing to grant expedited processing compromises a "recognized interest."

23.    The importance of this discussion is evidenced by the aforementioned letters from the House Committee on Energy and Commerce, U.S. Senators, and Ohio's Congressional Delegation. *See* App. A at 10–13; App. B at 30; App. C; Letter from the Hon. Sherrod Brown et al to the Hon. Michael S. Tegan (Feb. 15, 2023) (Ex. 3). These widely reported letters also surface bi-partisan concerns regarding the EPA's response to the Incident. *See* App. B at 59. Furthermore, many of the articles detailing events in East Palestine have highlighted concerns among locals and officials that the EPA's response is critically inadequate and potentially exposes people to continuous danger. *See* App. B at 4–5, 11–13, 20–21, 22, 37–38, 46, 62–63, 73–76.

24.    The ongoing debate surrounding the sufficiency of the EPA's response to the environmental disaster in East Palestine is of the highest national importance given that the health of the community's four thousand residents, and potentially even more people in surrounding areas, may even now be endangered. And regardless of whether those concerns are well founded, public access to the relevant data is vital.

## DEFENDANT'S DENIAL OF EXPEDITED PROCESSING

25.     On February 24, 2023, the EPA denied Plaintiffs' request for expedited

processing.  Letter from Gail Davis to Mike Howell (Feb. 24, 2023) ("Denial") (Ex. 4).

26.     Specifically, the EPA stated, "Your justification does not speak to how the release

of the records you are requesting listed above in #1-20 are urgently needed to inform the public, and

it does not speak to any expectation that lack of expedited treatment would pose an imminent threat

to the life or physical safety of an individual."  Denial at 4.  The EPA continued:

> More specifically, while you referenced news reports regarding the train derailment
> which took place in East Palestine, Ohio, on February 3, your justification does not show
> that the records you request in enumerated paragraphs #1-20 are tailored to aspects of that
> incident that are urgently needed to inform the public about government activity.  For
> example, your justification does not explain how any, much less all, of the records
> itemized in enumerated paragraphs #1-20 would inform the public on what you described
> as "concerns among locals and officials that the EPA's response is inadequate and
> potentially leaves people in danger".  For these reasons, your request does not contain the
> information required to support a finding that your request meets either of the expedited
> processing criteria.  Therefore, your request for expedited processing is denied.

*Id.* at 4–5.  The Denial did not engage further with Plaintiffs' detailed arguments for expedited

processing, the news attached (not "referenced") in Appendices A and B, or the existence of

widespread Congressional interest in the matter, including the letter from the Chairman of the

House Energy and Commerce Committee which sought much of the same specific information

as the Request.

27.     The Denial plainly errs.  The Request and its supporting Appendices demonstrate

in detail how its Specifications are tailored to an "urgent need."

28.     The Denial did not pass on the Plaintiffs' application for a fee waiver.

## DEFENDANT'S OBJECTION LETTER

29.     On March 2, 2023, Defendant transmitted a lengthy letter to Plaintiff containing a

number of objections to specific Specifications of the Request.  Letter from Kevin W. Hill to

Mike Howell (Mar. 2, 2023) ("March Letter") (Ex. 5).  The  March Letter pointedly did not take final action on the Request, rather it sought a "reply with the necessary information within 20 calendar days from the date of this email" and admonished that  "[i]f we do not hear back from you, EPA may issue a final determination to close out your request."  *Id.* at 7.

30.     The March Letter appears to have been written to comply with the "safe harbor" provisions of 40 C.F.R. § 2.102.  *See Hall & Assoc. v. EPA*, 83 F.Supp.3d 92, 102–03 (D.D.C. 2015).

31.     Plaintiffs responded at length on March 14, 2023 setting forth in detail the numerous legal and factual errors in the March Letter.  Letter from Mike Howell to Nathan Solorio & Kevin W. Hill (Mar. 16, 2023) (Ex. 6).  Plaintiffs withdrew Specification 8 of the Request which sought "[r]ecords sufficient to show a timeline of all the events related to the train's derailment in East Palestine, including releases of any chemical substances caused by the accident, response actions taken to address various hazards presented by the derailment, and testing of air, water, or soil for contamination related to derailment" based on the fact that the EPA has now published such a timeline on its website.  *Id.* at 9.  Plaintiffs also noted that although they "stand ready to meet and confer in good faith," "based on the fact that many of your objections were utterly lacking in merit [we] question whether delay is at work here." *Id.* at 16.

32.     Plaintiffs have received no further communication concerning the Request.

**FIRST CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Expedited Processing**

33.     Plaintiffs re-allege paragraphs 1–32 as if fully set out herein.

34.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

35.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

36.    Plaintiffs properly asked that EPA expedite the processing of Plaintiffs' February FOIA Request, based upon Plaintiffs' showing that the Request concerns a "compelling need," namely:  "An urgency to inform the public about an actual or alleged Federal government activity, if the information is requested by a person primarily engaged in disseminating information to the public."  40 C.F.R. § 2.104(f).

37.    Defendant refused in part to expedite Plaintiffs' FOIA Request, contrary to the factual and legal showing Plaintiffs made demonstrating their entitlement to expedition.

38.    Defendant is in violation of FOIA.

39.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled to on an expedited basis and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

40.    Plaintiffs have no adequate remedy at law.

41.    Plaintiffs are entitled to seek immediate judicial relief for EPA's denial of expedited processing.  *See* 5 U.S.C. § 552(a)(6)(E)(iii) ("Agency action to deny . . . a request for

expedited processing pursuant to this subparagraph . . . shall be subject to judicial review.”);

*ACLU v. DOJ*, 321 F.Supp.2d 24, 28–29 (D.D.C. 2004).

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.    Enter a preliminary and permanent injunction compelling Defendant to process

Plaintiffs' FOIA Request on an expedited basis.

B.    Retain jurisdiction over this matter as appropriate;

C.    Award Plaintiffs their costs and reasonable attorneys' fees in this action as

provided by 5 U.S.C. § 522(a)(4)(E); and

D.    Grant such other and further relief as this Court may deem just and proper.

Dated: March 20, 2023                    Respectfully submitted,


/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 99979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*