UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HERITAGE FOUNDATION,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. ENVIRONMENTAL PROTECTION AGENCY,** <br><br> Defendant. | Civil Action No. 23-748 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Heritage Foundation and Mike Howell recently submitted a Freedom of Information Act request to Defendant Environmental Protection Agency, seeking records related to the Norfolk Southern freight-train derailment in East Palestine, Ohio. Plaintiffs also applied for expedited processing of the request, which EPA denied. Dissatisfied with that decision, they filed this lawsuit against EPA and now move for a preliminary injunction. Because Plaintiffs have not carried their burden of showing that such relief is warranted, the Court will deny their Motion.

**I.    Background**

On February 23, 2023, Heritage and Howell, the Director of Heritage's Oversight Project and an investigative columnist with Heritage's publication *The Daily Signal*, submitted a FOIA request to EPA. See ECF No. 1-6 (FOIA Request) at 1; ECF No. 1 (Compl.), ¶ 3. (The Court will refer to Plaintiffs together as Heritage.)  The request sought 20 categories of information related to the derailment, ranging from "All communications with any state or local government employee relating to the Incident" to "All records relating to the Incident and 'Trump.'" FOIA

1

Request at 1–3.  Heritage also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and EPA regulations.  Id. at 7 (citing 40 C.F.R. § 2.104(f)).

On February 24, EPA denied the latter request.  See ECF No. 1-8 (Denial Letter).  It concluded that the requesters had not explained how their listed categories were tailored to urgently needed information about the incident.  Id. at 4–5.  Plaintiffs responded with this lawsuit on March 20, challenging EPA's denial of their expedite request.  They filed the present Motion for a Preliminary Injunction a week later, on March 27.  See ECF No. 4 (Mot. for Preliminary Injunction).

After Plaintiffs filed their Motion, the parties conferred by video call; EPA memorialized that call in a March 30 letter.  See ECF No. 5-7 (Letter of Mar. 30, 2023).  That letter identifies how the agency intends to proceed on each of the 20 questions, including noting that one has been withdrawn and that others will be answered by production of a single document.  Id. at 1–6.  For the balance, EPA estimates that, due to the need to review "thousands of potentially responsive records, coordinat[e] with several offices within EPA, and consult[] with other agencies," full document production should conclude on November 1, 2023.  Id. at 6.  Not content with that timetable, Heritage presses this Motion.

## II.     Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. NRDC, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter, 555 U.S. at 20).  The final two factors merge when the government is the

opposing party. Pub. Citizen Health Rsch. Grp. v. Acosta, 363 F. Supp. 3d 1, 20 (D.D.C. 2018). "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted." Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (citing Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).

      Historically, these factors have "been evaluated on a 'sliding scale.'" Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009) (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999)). In other words, if the movant makes an "unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." Id. at 1291–92. This Circuit has hinted, though not held, that Winter — which overturned the Ninth Circuit's "possibility of irreparable harm" standard — establishes that "likelihood of irreparable harm" and "likelihood of success" are "'independent, free-standing requirement[s].'" Sherley, 644 F.3d at 392–93 (quoting Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)); see League of Women Voters v. Newby, 838 F.3d 1, 7 (D.C. Cir. 2016) (declining to address whether "sliding scale" approach is valid after Winter). In any event, this Court need not resolve the viability of the sliding-scale approach today, as it determines that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." Sherley, 644 F.3d at 393.

      Relevant here, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm," and if a party fails to make a showing of irreparable harm, "that alone is sufficient . . . to conclude that the district court did not abuse its discretion." CityFed Fin. Corp. v. Off. Thrift Supervision, U.S. Dep't of Treas., 58 F.3d 738, 747 (D.C. Cir. 1995) (citation and internal quotations omitted). The D.C. Circuit has cautioned, moreover, that a preliminary

injunction generally "should not work to give a party essentially the full relief [it] seeks on the merits," Dorfmann v. Boozer, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969); see also Diversified Mort. Invs v. U.S. Life Ins. Co. of N.Y., 544 F.2d 571, 576 (2d Cir. 1976) (collecting cases), and this equitable power "should not be exercised unless it is manifest that the normal legal avenues are inadequate [and] that there is a compelling need to give the plaintiff the relief he seeks." Dorfmann, 414 F.2d at 1174.

**III.    Analysis**

The Court considers the preliminary-injunction factors in turn.  The first is close, but the second and third cut decisively against Heritage.  The Court will accordingly deny Plaintiffs' Motion.

A. Likelihood of Success

FOIA provides that expedited processing of a request is appropriate "in cases in which the person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). "Compelling need" is defined, in turn, to mean:

> (I) that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

Id. § 552(a)(6)(E)(v)(I)–(II).  Plaintiffs contend that their request meets the second definition, which is mirrored in EPA's regulation governing expedited-process requests.  See FOIA Request at 7–8; Mot. at 12–31; see also 40 C.F.R. § 2.104(f)(1)(ii) (compelling need is established when there is "[a]n urgency to inform the public about an actual or alleged Federal government

4

activity, if the information is requested by a person primarily engaged in disseminating information to the public").

Defendant, for its part, raises two primary arguments for why Plaintiffs are unlikely to show that they satisfy that definition: (1) they have not established that either of them qualifies as a "person primarily engaged in disseminating information," and (2) they have not established an "urgency to inform the public." ECF No. 5 (Opp. to PI Mot.) at 14–21. The Court considers each category separately, mindful of the D.C. Circuit's caution that the urgency-to-inform standard is "intended to be narrowly applied." Al-Fayed v. CIA, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, at 26 (1996)).

1. *Disseminating Information*

Consistent with our Circuit's restraint, courts in this district have emphasized that they "must be cautious in deeming non-media organizations as persons primarily engaged in information dissemination." Landmark Legal Found. v. EPA, 910 F. Supp. 2d 270, 275–76 (D.D.C. 2012). Courts have thus "routinely held that media organizations and newspapers qualify," but in light of the Circuit's reasoning, "other types of organizations have been held to not qualify, unless information dissemination is also their main activity, and not merely incidental to other activities that are their actual, core purpose." Progress v. Consumer Fin. Prot. Bureau, No. 17-686, 2017 WL 1750263, at *4 (D.D.C. May 4, 2017) (collecting cases). The relevant EPA regulation likewise provides that if the requester is "not a full-time member of the news media, the requester must establish that they are a person whose primary professional activity or occupation is information dissemination, although it need not be the requester's sole occupation." 40 C.F.R. § 2.104(f)(3).

Here, Plaintiff Howell can likely show that he qualifies as a person primarily engaged in disseminating information. As the FOIA request explained, he is "an author for the *Daily Signal*," which the request described as "a major news outlet." FOIA Request at 6. Major or not, the *Daily Signal* is indeed a news outlet, and Howell does indeed serve as a columnist there. Defendant recognizes as much. See Opp. at 17 ("Mr. Howell's biography page on the *Daily Signal* website, cited by Plaintiffs in their request, describes him as both 'an investigative columnist for *The Daily Signal* and a senior adviser for executive branch relations at The Heritage Foundation.'"). Heritage itself presents a trickier call: the organization is a think tank and the request described it that way, even if its Oversight Project appears more focused on public dissemination of information. See FOIA Request at 6 ("Heritage Foundation's mission is to is to formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense."). No matter, however, because at least one of the FOIA requesters — *i.e.*, Howell — appears likely to satisfy this requirement.

2. *Urgency to Inform the Public*

Courts consider three factors to determine whether a requester has demonstrated sufficient urgency to merit expedited processing: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." Al-Fayed, 254 F.3d at 310. EPA does not dispute that the request concerns federal-government activity and argues only that Plaintiffs have established neither exigency nor that delay would compromise a significant recognized interest. See Opp. at 17.

As to the first, the Court believes that Heritage can likely show that the FOIA request at least in part concerns matters of current exigency. The derailment and EPA's response are newsworthy topics, as EPA recognizes. Id. at 18; see Al-Fayed, 254 F.3d at 310. Indeed, Plaintiffs cite voluminous media coverage substantiating that the issue is one of genuine and widespread concern. See Mot. at 15–31; see also Energy Pol'y Advocs. v. U.S. Dep't of the Interior, No. 21-1247, 2021 WL 4306079, at *4 (D.D.C. Sept. 22, 2021).

EPA's response, in its denial letter and briefing, is that Plaintiffs have not identified that the specific requests they make will shed light on currently exigent matters. See Opp. at 18. In other words, they argue that while the general topic of the train derailment is a matter of current exigency, Plaintiffs have not shown that their specific requests within that topic are. See Elec. Priv. Info. Ctr. v. Dep't of Def., 355 F. Supp. 2d 98, 102 (D.D.C. 2004) ("The fact that Plaintiff has provided evidence that there is some media interest in data mining as an umbrella issue does not satisfy the requirement that Plaintiff demonstrate interest in the specific subject of Plaintiff's FOIA request, the Verity K2 Enterprise software program."). On this score, EPA is partly right. Some of Plaintiffs' queries, such as one seeking information on the derailment and "Trump," do not concern matters of particular public exigency and can be resolved in the normal course. Cf. ECF No. 6 (Reply) at 10 (arguing that "[t]he connection of President Donald J. Trump to the Incident is palpable in the press," but nowhere identifying why such information is exigent). Yet others, such as those going directly to EPA's communications with local officials on the ground regarding the ongoing cleanup, plainly do. The Court will save a detailed analysis for any future merits ruling but notes here only that Plaintiffs do make out a strong case on this first element with respect to at least some of their requests.

On the second factor, however, Heritage has greater difficulty in showing that the consequences of delay would compromise a significant recognized interest. Plaintiffs offer that delay would jeopardize their ability to shape ongoing public debate, as well as congressional proceedings and executive action on the ground. See Mot. at 27–31; Reply at 11. But they have not shown why that is so. The caselaw on which they rely suggests that a plaintiff seeking to establish that a particular delay would compromise recognized interests must do more than gesture at the general decline in the documents' value over time. Instead, she may need to identify a specific end point at which the information's value drops off altogether — *i.e.*, the conclusion of a process such as a legislative vote, impeachment proceeding, national census, court case, or the like. See, e.g., Mot. at 29 (quoting Brennan Ctr. for Just. v. Dep't of Com., 498 F. Supp. 3d 87, 98–99 (D.D.C. 2020), for proposition that plaintiffs there made this merits showing because "the 2020 census and reapportionment processes are currently unfolding . . . but they will largely conclude early next year" at a particular time); see also Opp. at 21 (citing Long v. Dep't of Homeland Sec., 436 F. Supp. 2d 38, 43 (D.D.C. 2006), for proposition that plaintiffs must "identify an imminent action indicating that the requested information will not retain its value if procured through the normal FOIA channels" to make out this element) (emphasis added and citation omitted). Plaintiffs do not identify any such end point. See Reply at 11 (arguing that request "directly relates to an on-going debate about the EPA's response to the Incident" but recognizing that, "[t]o be sure, that is not a debate about a particular bill before Congress, or a particular Administration regulation").

In addition, Plaintiffs never provide an alternative legal standard in their Reply, resting primarily on one court's irreparable-harm analysis (addressed below) and on another's language describing an impeachment proceeding that did in fact have an end date. See Reply at 12 (citing

Am. Immigr. Council v. U.S. Dep't of Homeland Sec., 470 F. Supp. 3d 32, 38 (D.D.C. 2020), and Ctr. for Pub. Integrity v. U.S. Dep't of Def., 411 F. Supp. 3d 5, 13 (D.D.C. 2019)); see also Ctr. for Pub. Integrity, 411 F. Supp. 3d at 12 (finding sufficient harm "[i]f the requested information is released after the impeachment proceedings conclude," a particular point after which the information will lose value) (emphasis added).

To be clear, the Court does not hold that a definite end-date is necessary to show that delay would compromise a significant recognized interest. It holds only that, because at this stage Plaintiffs have neither provided a convincing counter to that rule nor offered any concrete time frame, the Court is not persuaded that they are likely to succeed on the merits as to this component.

\* \* \*

Because Heritage has not met its burden of persuading the Court that it can make out every element it needs to prevail on the merits, this factor is at best a wash for Plaintiffs or tips slightly against them.

B. Irreparable Harm

Of greater significance here, Heritage does not surmount the "high standard for irreparable injury" required for a preliminary injunction. Chaplaincy of Full Gospel Churches, 454 F.3d at 297. To show irreparable harm, a plaintiff must demonstrate that it faces an injury that is "both certain and great," "actual . . . not theoretical," and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Wis. Gas Co. v. Fed. Energy Reg. Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks and emphasis omitted). Further, a plaintiff must show that "the alleged harm will directly result from the action which the [plaintiff] seeks to enjoin," as "the court must decide whether the harm will in

9

fact occur[].": Id.; see also Winter, 555 U.S. at 22 (rejecting "'possibility' standard [as] too lenient" and explaining that "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction").

Courts in our district have generally found irreparable harm in FOIA preliminary-injunction cases only where the requested documents are "time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost." New York Times Co. v. Def. Health Agency, No. 21-566, 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021) (internal quotation marks omitted) (summarizing cases). For example, courts have granted preliminary injunctions in cases seeking documents regarding potential political interference with mail-in voting ahead of the imminent 2020 Presidential election, see Protect Democracy Project, Inc. v. U.S. Dep't of Just., 498 F. Supp. 3d 132, 141 (D.D.C. 2020); documents relevant to the 2020 census where "the value of the information sought . . . would be materially lessened or lost" once the census process concluded, Brennan Ctr., 498 F. Supp. 3d at 100; documents related to an ongoing and time-limited impeachment process, Ctr. for Public Integrity, 411 F. Supp. 3d at 7, 11; and documents related to a requester's role as a confidential FBI informant ahead of an imminent evidentiary hearing. Aguilera v. FBI, 941 F. Supp. 144, 151 (D.D.C. 1996); see also generally New York Times, 2021 WL 1614817, at *8 n.9 (canvassing these cases). By contrast, courts have denied preliminary injunctions in cases without a definite impending or time-limited event, such as where plaintiffs sought documents related to FISA surveillance generally, Elec. Privacy Info. Ctr. v. Dep't of Justice, 15 F. Supp. 3d 32, 35, 39–40 (D.D.C. 2014); an already existing Consumer Financial Protection Bureau rule, Allied Progress, 2017 WL 1750263, at *6; records related to former Secretary of State Hillary

10

Clinton's use of a private email server well before the election, Daily Caller v. U.S. Dep't of State, 152 F. Supp. 3d 1, 8–13 (D.D.C. 2015); or records concerning an individual's termination after the event. Wadelton v. Dep't of State, 941 F. Supp. 2d 120, 121 (D.D.C. 2013).

A recent and thorough opinion from Judge Beryl Howell is instructive. In New York Times Co. v. Defense Health Agency, Judge Howell found no irreparable harm to a requester who sought records related to the federal government's distribution of COVID-19 vaccines soon after their development. See 2021 WL 1614817, at *1–2. While the requested documents would be "indisputably valuable in informing the public about how the federal government functioned in preserving public health during a global pandemic," Judge Howell concluded that there was no irreparable harm because "these records are not 'time-sensitive' in the sense of losing value vis-à-vis any date certain." Id. at *8. The touchstone for the FOIA irreparable-harm analysis is thus whether a plaintiff can show a specific need for records in advance of an upcoming event that, once past, would leave the information with little to no relevance. Id.; Brennan Ctr., 498 F. Supp. 3d at 100.

Here, Plaintiffs do not seek documents that are necessary ahead of such an imminent event. They have identified no specific proceeding — be it a vote on legislation, a proposed administrative action, or a judicial process — after which the sought records would lose substantial value, much less one that will occur before November 2023, when EPA estimates that it will produce the records. Indeed, Plaintiffs essentially concede as much. See Reply at 11 (arguing that request "directly relates to an on-going debate about the EPA's response to the Incident" but recognizing that, "[t]o be sure, that is not a debate about a particular bill before Congress, or a particular Administration regulation"). While Heritage points out that Congress is conducting oversight related to the derailment, it does not explain why the documents it seeks are

11

essential to the integrity of such oversight proceedings.  Cf. New York Times, 2021 WL 1614817, at *9 (noting that, there as here, "delay in this production is not halting" public oversight of the incident).  Public critiques of how EPA handled the derailment-cleanup effort have no expiration date; though Plaintiffs may prefer to levy them as expeditiously as possible, they cannot show irreparable harm from delay.

Heritage's best counterargument rests on American Immigration Council v. U.S. Dep't of Homeland Security, 470 F. Supp. 3d 32 (D.D.C. 2020).  There, Immigration and Customs Enforcement had approved a FOIA request from an immigration-advocacy coalition seeking documents regarding COVID-19 conditions in detention facilities, but then failed to timely produce the records.  The district court there held that a delay in releasing the information sought would produce irreparable harm, even absent a particular end-date by which plaintiffs needed the records.  Id. at 38.  But the plaintiffs there sought information concerning the agency's "response to the [then-ongoing] COVID-19 pandemic," a "rapidly evolving" emergency to which the agency's response would no longer be as relevant or pressing once the pandemic ebbed.  Id.  In any event, to the extent that this case's reasoning is inconsistent with the conclusion in New York Times and with other cases, this Court reads Al-Fayed and the weight of district precedent to suggest that the sounder approach is to require a specific event or time period after which the information will lose significant value.  See Al-Fayed, 254 F.3d at 310 (emphasizing that, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors") (quoting H.R. Rep. 104-795, at 2 (1996)).

Plaintiffs also maintain that they will suffer irreparable harm because "[t]ime cannot be wound back," and so "[t]he time lost to Plaintiffs . . . is thus irreparable."  Reply at 16.  This

12

argument sweeps far too broadly.  Every requester would always rather have her records sooner rather than later.  Under Plaintiffs' logic, any requester who suffers even a one-day delay in any FOIA case could show irreparable harm.  That cannot be the standard.  Something more is needed, and the Court concludes that it is the presence of "an imminent event, after which event the utility of the records would be lessened or lost."  New York Times, 2021 WL 1614817, at *8 (internal quotation marks omitted).

Plaintiffs finally maintain that "the residents of East Palestine are irreparably harmed every day they lack information that is vital to making informed decisions."  Mot. at 34.  Unfortunately for Plaintiffs, however, "injuries to third parties are not a basis to find irreparable harm."  Alcresta Therapeutics, Inc. v. Azar, 318 F. Supp. 3d 321, 326 (D.D.C. 2018).  To the extent Plaintiffs argue that this is not a third-party harm but rather a harm they themselves experience, see Reply at 20–21, it folds back into their primary argument about newsworthiness, which fails because the information will not lose value past a future time certain.  Plaintiffs must show irreparable harm to their own role in the public conversation; as the Court has held, they cannot do so.  This factor accordingly weighs heavily against Heritage.

C.  Balance of Equities and the Public Interest

The balance-of-equities and public-interest factors merge here and also substantially favor EPA.  These require courts to "balance the competing claims of injury and . . . consider the effect on each party with the granting or withholding of the requested relief," Winter, 555 U.S. at 24 (quoting Amoco Production Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987)), in addition to paying "particular regard for the public consequences in employing the extraordinary remedy of injunction."  Id. (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).  Where the

federal government is the opposing party, the two factors merge.  Nken v. Holder, 556 U.S. 418, 435 (2009).

Here, issuing the requested injunction would just allow Heritage to jump over other FOIA requesters in line.  As EPA described to Plaintiffs in the parties' March 29 call, the agency had by the end of March 2023 received no fewer than 47 FOIA requests related to the East Palestine train derailment.  See Mar. 30, 2023, letter at 1; ECF No. 5-1 (Declaration of Timothy R. Epp), ¶ 16.  Other courts have on this basis found the balance of equities and public interest to weigh against plaintiffs in similar circumstances.  See New York Times, 2021 WL 1614817, at *10 (other requesters "would almost certainly face additional delays" if injunction were granted); Nation Magazine v. Dep't of State, 805 F. Supp. 68, 74 (D.D.C. 1992) (holding that entry of preliminary injunction expediting FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA"); Baker v. Consumer Fin. Prot. Bureau, No. 18-2403, 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) (granting expedite request "would harm the . . . other requesters . . . in line ahead of Plaintiff and would erode the proper functioning of the FOIA system"); cf. Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (refusing to compel agency action under 5 U.S.C. § 706(1) "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain") (quoting In re Barr Laboratories, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)) (formatting modified).  The Court agrees and finds these factors counsel against injunctive relief.

\* \* \*

EPA has thus far been a constructive partner to Heritage and other FOIA requesters seeking information about the incident: it has proactively released information to the public, see

Epp Decl., ¶ 5; compiled more than 14,000 records in an effort to expeditiously comply with requests, id., ¶ 15; and worked productively with Plaintiffs here to facilitate document production. See Letter of Mar. 30, 2023. The Court commends such actions. Because the three stay factors do not favor Plaintiffs, it does not believe a preliminary injunction is warranted at this point.

**IV.     Conclusion**

For the foregoing reasons, the Court will deny Plaintiffs' Motion for a Preliminary Injunction. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 14, 2023